**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MARIETTA MEMORIAL HOSPITAL, et al.,

                    Plaintiffs,

v.                                   CIVIL ACTION NO.   2:16-cv-08603

WEST VIRGINIA HEALTH CARE AUTHORITY,

                    Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs Marietta Memorial Hospital, Marietta Area Health Care, Inc., and MHC Physicians, Inc.'s (collectively, "Marietta") Motion for Attorney's Fees.   (ECF No. 75.) For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Marietta's motion.

### I.   BACKGROUND

Marietta brought this case to challenge a state statute creating a new exemption to West Virginia's Certificate of Need ("CON") program.   Hospitals generally must obtain a CON from the West Virginia Health Care Authority ("HCA") before introducing or removing various health services.   *See* W. Va. Code § 16-2C-8.   However, certain exceptions to the CON process are provided in Chapter 16 of the West Virginia Code.   *See* §§ 16-2D-10, 16-2D-11.   In 2016, the West Virginia Legislature passed a law exempting from the CON process "[t]he construction, development, acquisition or other establishment by a licensed West Virginia hospital of an

1

ambulatory health care facility in the county in which it is located and in a contiguous county within or outside the state . . . ."   § 16-2D-11(c)(12) (West 2016), *amended by* H.D. 117, 2017 Leg., 1st Spec. Sess. (W. Va. 2017).   Marietta's Complaint, filed on September 6, 2016, relied in part on 42 U.S.C. § 1983 to argue that the state statute violated Marietta's civil rights under the dormant commerce clause and the Fourteenth Amendment's due process and equal protection clauses.   (*See* ECF No. 1 at ¶¶ 34–68.)   Marietta sought declaratory relief, injunctive relief preventing HCA from enforcing the recently adopted exemption, and attorney's fees and costs pursuant to 42 U.S.C. § 1988.   (*See id.* at 12, 15–18, 20–21.)

On September 15, 2016, Marietta filed a Motion for Temporary Restraining Order, Preliminary and/or Permanent Injunction, (ECF No. 8), which the Court construed as a motion seeking a preliminary injunction, (*see* ECF No. 39 at 1 & n.1).   After hearing arguments on the motion, the Court entered a memorandum opinion on December 19, 2016, granting the motion for preliminary injunction and directing HCA not to take action on any pending or future applications for exemptions filed under the challenged provision and ordering that applications for exemption under that subsection would not be automatically approved by operation of law.   (*See id.* at 22–23.)   This Court subsequently granted in part Marietta's second motion for preliminary injunction on May 18, 2017, and continued the previously ordered injunction after the West Virginia Legislature amended the challenged statute's language but not to a degree that cured the defects the Court found in its previously entered memorandum opinion.   (*See* ECF No. 65.)

During a 2017 special session, the West Virginia Legislature passed a bill repealing the exemption that gave rise to this suit.   As a result, on November 17, 2017, the Court granted HCA's motion to dismiss this case as moot and dissolved as moot the preliminary injunction previously

2

issued and later extended.   (ECF No. 74.)   However, the Court retained jurisdiction over this case to allow Marietta to file a petition for attorney's fees and costs under 42 U.S.C. § 1988.   (*Id.* at 5.) Marietta filed the current Motion for Attorney's Fees on December 8, 2017.   (ECF No. 75.)   HCA responded to the motion on December 22, 2017, (ECF No. 79), and Marietta filed its reply on December 29, 2017, (ECF No. 80).   As such, the motion is fully briefed and ripe for adjudication.

## II.   DISCUSSION

While the American Rule generally prohibits the recovery of attorney's fees in federal court, *see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 241 (1975), various exceptions to the rule exist.   One exception is 42 U.S.C. § 1988, which applies to § 1983 actions and allows prevailing parties to seek attorney's fees.   Under this statute, prevailing plaintiffs should recover fees absent special circumstances making the award unjust.   *See* 42 U.S.C. § 1988 ("[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."); *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (per curiam); *see also N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68 (1980) (noting that "the court's discretion to deny a fee award to a prevailing plaintiff is narrow").   Fees under § 1988 are available from state agencies.   *See Maher v. Gagne*, 448 U.S. 122, 131–33 (1980); *Hutto v. Finney*, 437 U.S. 678, 689–98 (1978).   These fee-shifting statutory schemes ensure that legal remedies are available to "vindicate the economic or social rights of individuals who might not otherwise be able to afford the costs of litigation."   *See Koontz v. Wells Fargo N.A.*, No. 2:10–cv–00864, 2013 WL 1337260, at *5 (S.D. W. Va. Mar. 29, 2013).   In furtherance of that policy, fees should be "adequate to attract competent counsel" without "produc[ing] windfalls to attorneys."   S. Rep. No. 94–1011, at 6 (1976), *as reprinted in* 1976 U.S.C.C.A.N.

5908 (noting that the prevailing party's counsel should be compensated "for all time reasonably expended on a matter").

As a preliminary matter, the award of fees under § 1988 is limited to the "prevailing party," which means the litigant must have achieved some success on the merits of the case. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (describing this issue as a "statutory threshold"). The Supreme Court has explained that (1) the plaintiff must achieve a "material alteration of the legal relationship of the parties," and (2) that alteration must be "judicially sanctioned." *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604–06 (2001); *see also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 498 U.S. 782, 792–93 (1989). Plaintiffs do not need to obtain the specific relief claimed in the complaint to achieve prevailing party status. *See, e.g.*, *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 281 (4th Cir.), *cert. denied*, 537 U.S. 825 (2002); *see also Lefemine v. Wideman*, 568 U.S. 1, 3–5 (2012). Interim relief may make the plaintiff a prevailing party unless further proceedings on the merits are contemplated, *see Dupuy v. Samuels*, 423 F.3d 714, 719–725 (7th Cir. 2005), or if the case is ultimately lost on the merits, *see Sole v. Wyner*, 551 U.S. 74, 84–85 (2007) (representing a situation where the plaintiff obtained a preliminary injunction but was denied a permanent injunction after dispositive adjudication on the merits). In other words, "a preliminary injunction that provides some relief on the merits of the plaintiff's claim may be sufficient to establish prevailing-party status, if subsequent events render the remainder of the plaintiff's claim moot."[1]  10 James Wm.

---

[1] The majority of circuit courts have explicitly recognized that a preliminary injunction may represent the judicial imprimatur required to convey prevailing party status. *See Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 715–18 (9th Cir. 2013); *Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 910 (8th Cir. 2012); *Kan. Judicial Watch v. Stout*, 653 F.3d 1230, 1237–41 (10th Cir. 2011), *cert. denied*, 565 U.S. 1246 (2012); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1355–56 (11th Cir.), *cert. denied*, 556 U.S. 1282 (2009); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 232–33 (3d Cir. 2008); *Dearmore v. City of Garland*, 519 F.3d 517, 524–26 (5th Cir.), *cert. denied*, 555 U.S. 938 (2008); *Sundusky Cty. Democratic Party v. Blackwell*, 191 F. App'x 397, 399 (6th Cir. 2006)

4

Moore, *Moore's Federal Practice* § 54.171[3][c] (3d ed. 2017) (citations omitted); *see also*

*Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir.) ("[T]o qualify as a prevailing party

under § 1988(b), we hold that the plaintiff (1) must win a preliminary injunction, (2) based upon

an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed

to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot

the action, which prevents the plaintiff from obtaining final relief on the merits."), *cert. denied*,

555 U.S. 938 (2008).   Defendant challenges Marietta's status as a prevailing party for purposes

of a fee award.   (*See* ECF No. 79 at 1–2.)

Here, the Court's preliminary injunction entered in December 2016 and extended in May

2017 establishes Marietta as the prevailing party in this case.   While the Court did not resolve the

merits of the dispute or enter a final judgment, the injunction materially altered the legal

relationship between the parties for purposes of *Buckhannon*.   *See* 532 U.S. at 604–05.   Prior to

the lawsuit, Marietta, out-of-state entities, would have been forced to apply for a CON whenever

they wanted to construct or acquire an ambulatory care facility anywhere in the state.   However,

an in-state hospital could potentially acquire the same facility without going through the CON

process; it could simply file an exemption application.   The memorandum opinion granting the

injunction found, after careful analysis, that the challenged statute "likely [was] discriminatory on

its face" by treating hospitals differently based on their state residencies, favored in-state economic

interests over out-of-state interests, and was "probably unconstitutional under the dormant

commerce clause." (ECF No. 39 at 13–16.)   Marietta was entitled to enforce that injunction.

The Court also found that the likely denial of Marietta's constitutional right established an

---

(per curiam) (unpublished opinion); *Dupuy v. Samuels*, 423 F.3d 714, 723 & n.4 (7th Cir. 2005); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 946–50 (D.C. Cir. 2005).

irreparable harm that was "immediately present." (*Id.* at 19 ("Marietta will inevitably and imminently suffer economic harm as a result of the statute at issue.").)  These findings speak directly to the merits of Marietta's Complaint, and the injunction prevented exemption applications under the statute from being approved, which changed Marietta's relationship with HCA as it was no longer treated as inferior in the realm of CONs and ambulatory care facilities.

Had the preliminary injunction here simply maintained the status quo or, alternatively, been reversed by subsequent order or trial, then the Court would not be able to reach such a conclusion. *See Sole*, 551 U.S. at 83; *Advantage Media, L.L.C. v. City of Hopkins*, 511 F.3d 833, 836–39 (8th Cir.), *cert. denied*, 553 U.S. 1054 (2008).  However, the effect of the preliminary injunction was never disturbed; it was dissolved only after the West Virginia Legislature repealed the challenged statute, which this Court determined rendered the case moot.  Ultimately, Marietta acquired the relief it sought.  The dissolution of the injunction was a mere formality, and the injunction would have remained in effect if the state legislature did not repeal the statute, which the Court believes was a direct result of its rulings and discussion on the likely unconstitutionality of the law.[2] Consequently, Marietta was prevented from obtaining final relief on the merits.  Because Marietta

---

[2] Defendant relies on the Supreme Court's decision in *Buchannon* to argue that insofar as Marietta relies on the "catalyst theory," that is not an appropriate means of determining a plaintiff's prevailing party status.  (ECF No. 79 at 2.)  However, the *Buchannon* Court explained the catalyst theory as the success of the plaintiff if the lawsuit achieved the desired result by bringing about a voluntary change in the defendant's conduct.  *See Buchannon*, 532 U.S. at 605.  Here, however, the change in conduct did not come from Defendant.  Rather, the change came from the West Virginia Legislature, which is not named or represented by an agent in this action, following the issuance of the preliminary injunction.  *Cf. id.* ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." (emphasis in original)).  Further, without the preliminary injunction, the Court is almost certain that the challenged statute would not have been amended and Defendant would have been free to resume the conduct that was the subject of the litigation.  *See Initiative & Referendum Inst. v. U.S. Postal Service*, 794 F.3d 21, 23–25 (D.C. Cir. 2015).  Therefore, the Court is not persuaded by Defendant's position regarding the applicability of the catalyst theory and does not find that it prevents Marietta from being named the prevailing party.  Accepting Defendant's argument would be to endorse the idea that a plaintiff should not be awarded fees in situations where a court indicates to a legislative body through a court order that a law is most likely unconstitutional, which then causes the legislature to react and correct its error.

successfully won a preliminary injunction based on a clear indication that it was likely to succeed on its claim under the dormant commerce clause, which caused the State to moot the action, Marietta is a prevailing party.  *Cf. Dearmore*, 519 F.3d at 524.

Section 1988 within Title 42 of the U.S. Code, like other fee-shifting statutes, awards fees on a time-based computation determined by the Court and known as the "lodestar" method.  *See City of Burlington v. Dague*, 505 U.S. 557, 565 (1992); *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).  In *Hensley*, 461 U.S. at 424, the Supreme Court synthesized two earlier approaches to awarding fees under the lodestar method.  *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir. 1973).  The Court stated the following in *Hensley*:

> [T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.  The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  Where the documentation is inadequate, the district court may reduce the award accordingly.

461 U.S. at 433.  This approach reflects the Third Circuit's decision in *Lindy*, but the Court also explicitly approved the use of the following twelve factors set out by the Fifth Circuit in *Johnson* to establish the hours and the rate: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to properly perform the legal service; (4) preclusion of other employment due to the attorney's acceptance of the case; (5) customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of

the attorney; (10) "undesirability" of the case; (11) nature and length of attorney's professional relationship with client; and (12) awards in similar cases.   *See* 488 F.2d at 717–19.

Before calculating the number of compensable hours, the Court must proceed toward assigning a proper rate to those hours.   *See Wolfe v. Green*, No. 2:08–cv–01023, 2010 WL 3809857, at *4 (S.D. W. Va. Sept. 24, 2010) (describing this endeavor as "the critical inquiry" (quoting *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 289 (4th Cir. 2010))).   The prevailing party has the burden of producing "satisfactory evidence" that the requested rates are similar to the prevailing market rate in the forum's community, *see Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994), which reflects "similar services by lawyers of reasonably comparable skill, experience and reputation."   *See Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984); *see also Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).   The prevailing market rate may be in line with or different than the attorney's billing rate.   *See, e.g.*, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).   It is typically established by affidavits of counsel with similar experience as to what they would charge for a similar case, amounts awarded to counsel with similar experience in similar litigation, and amounts awarded to counsel for his services in prior litigation.   *See Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 228 (4th Cir. 2009); *see also Brewer v. Protexall, Inc.*, 50 F.3d 453, 459 (7th Cir. 1995).   The Court may also consider counsel's experience and expertise, *see Blum*, 465 U.S. at 899 n.15; *Johnson*, 488 F.2d at 718; *see also Buffington v. Baltimore Cty.*, 913 F.2d 113, 130 (4th Cir. 1990), *cert. denied*, 499 U.S. 906 (1991), and his or her status as partner or associate, *see, e.g.*, *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990).

In furtherance of establishing appropriate fees, the movant bears the burden of establishing the hours claimed through adequate documentation. *See Hensley*, 461 U.S. at 437 ("The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."). Counsel's fee request "should, at a minimum, (1) provide dates work was performed, (2) a reasonable, specific description of the work, and (3) time expended on the work." *Central Cab Co., Inc. v. Cline*, 972 F. Supp. 370, 374 (S.D. W. Va. 1997). The movant must also demonstrate that the claimed hours were "reasonably" expended. *Hensley*, 461 U.S. at 433–34; *see also Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1359 (4th Cir. 1995); *Broyles v. Director*, 974 F.2d 508, 513 (4th Cir. 1992). The Court may make reductions for unreasonably expended hours either by conducting an hour-by-hour review or making a percentage reduction if the evidence is voluminous and such a review would be impractical or inadequate. *See, e.g.*, *Shore v. Fed. Express Corp.*, 42 F.3d 373, 381 (6th Cir. 1994); *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). While no definitive rules exist to aid the Court in determining reasonable hours, the *Hensley* Court noted that excessive hours, redundant hours, and unnecessary hours are not compensable. *See* 461 U.S. at 434.

Recognizing that many times the prevailing party is not entirely successful on all claims, courts should award only an amount that is reasonable in relation to the results of the suit. *See id.* at 434; *see also Robinson*, 560 F.3d at 244. When all claims share a common core of facts, courts "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. Either the Court may apportion hours and award fees only based on the successful claims, or it can make a percentage reduction based on the limited success. *See, e.g.*, *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991).

Further, if a plaintiff bases its claim for relief on various legal theories and the court accepts one of those theories while rejecting others, the movant should collect fees for work that supported all of the theories. *See Hensley*, 461 U.S. at 435 ("[T]he court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."); *see also Nydam v. Lennerton*, 948 F.2d 808, 812 (1st Cir. 1991). Despite Marietta's decision here not to seek fees related to work on the pending motion, time reasonably expended on the fee issue generally is compensable in the fee award itself. *See I.N.S. v. Jean*, 496 U.S. 154, 165 (1990) (analyzing favorably for the movant this "fees on fees" issue in the context of the Equal Access to Justice Act); *see also Thompson v. Gomez*, 45 F.3d 1365, 1367 (9th Cir. 1995) (extending *Jean* to fees sought pursuant to § 1988).

Finally, while the lodestar amount is presumptively reasonable as a fee award, *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010) ("[T]here is a strong presumption that the lodestar is sufficient . . . ."), it may be adjusted for factors not already subsumed within the calculation. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) [hereinafter *Del. Valley*]; *Blum*, 465 U.S. at 898–900 (noting that the factors of (1) novelty and complexity of issues, (2) special skill of counsel, (3) quality of representation, and (4) results obtained are normally incorporated into the lodestar and cannot serve as a basis for adjustment). If a court chooses to deviate from the lodestar amount for reasons not already considered, then it must make specific and detailed findings as to why those factors were not included in the lodestar. *See Del. Valley*, 478 U.S. at 568; *see also Geier v. Sundquist*, 372 F.3d 784, 792–96 (6th Cir. 2004). The party seeking a deviation from the lodestar bears the burden of proving that the deviation is appropriate. *Blum*, 465 U.S. at 898.

10

Here, Marietta requests a fees and costs award of at least $136,945.84 based on the following:

| | | |
|---|---|---|
| Attorney Webster J. Arceneaux, III | 13.25 hours/$325 per hour | $4,306.25 |
| | 132.5 hours/$350 per hour | $46,375.00 |
| | | $50,681.25 |
| Attorney Thomas G. Casto | 35.50 hours/$325 per hour | $11,537.50 |
| | 165.25 hours/$350 per hour | $57,837.50 |
| | | $69,375.00 |
| Attorney Valerie Harris Raupp | 170.25 hours/$275 per hour | $46,818.75 |
| Attorney Spencer Elliot | 6 hours/$300 per hour | $1,800.00 |
| Legal Clerk Anna Casto | 14 hours/$125 per hour | $1,750.00 |
| Paralegal Michael Evans | 0.75 hours/$150 per hour | $112.50 |
| Paralegal Dora Radford | 26.5 hours/$150 per hour | $3,975.00 |
| Paralegal Beth Hager | 0.40 hours/$150 per hour | $60.00 |
| Costs | | $435.34 |
| **Subtotal** | | $175,007.84 |
| **Voluntary Reduction** | | ($38,062.00) |
| **Total** | | $136,945.84 |

(ECF No. 77-1 at 6.)

Defendant first argues that special circumstances exist to bar attorney's fees completely in that Marietta did not lack financial means to bring this lawsuit, contravening § 1988's public purpose, and HCA "had no alternative but to act according to the law as written." (ECF No. 79 at 3–4.) First, a plaintiff's ability to pay counsel does not represent special circumstances when determining whether to award attorney's fees. *See Bills v. Hodges*, 628 F.2d 844, 847 (4th Cir.

11

1980) (citing *Bunn v. Cent. Realty of La.*, 592 F.2d 891 (5th Cir. 1979) (per curiam)) ("We think the plaintiffs' ability to pay attorneys' fees is not a special circumstance that would render an award of fees unjust."); *see also Jones v. Wilkinson*, 800 F.2d 989, 991 (9th Cir. 1987), *aff'd*, 480 U.S. 926 (1987).   Further, it bears no difference on the analysis that HCA cannot choose which state statutes to enforce.   The Court construes this argument as an artfully crafted "good faith" argument, which courts have regularly held is not a special circumstance and irrelevant to the analysis.   *See Lefemine v. Wideman*, 758 F.3d 551, 557 (4th Cir. 2014); *accord Borengasser v. Ark. State Bd. of Educ.*, 996 F.2d 196, 200 (8th Cir. 1993); *In re Kan. Cong. Dists. Reapportionment Cases*, 745 F.2d 610, 613 (10th Cir. 1984).   The Fourth Circuit has been clear that the special circumstances exception to the award of attorney's fees under § 1988 "is very narrowly limited," *Lefemine*, 758 F.3d at 555–56 (quoting *Doe v. Bd. of Educ.*, 165 F.3d 260, 264 (4th Cir. 1998), *cert. denied*, 526 U.S. 1159 (1999)), and Defendant here has not identified a special circumstance that would preclude Marietta's ability to recover fees and costs.   *See Deja Vu of Nashville, Inc. v. Metro. Gov't*, 421 F.3d 417, 422 (6th Cir. 2005) (noting that the burden is on the non-prevailing party to make a "strong showing" that special circumstances warrant the denial of attorney's fees), *cert. denied*, 547 U.S. 1206 (2006).

    A.   *Reasonable Hourly Rates*

    Based on the applicable law explained above, the Court will determine the lodestar figure by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. The Court is guided by the *Johnson* factors in determining the reasonableness of the time expended and the hourly rate charged.   The following four factors are "particularly relevant" in determining reasonable hourly rates: (1) the customary fee for like work; (2) the experience, reputation, and

ability of the attorneys; (3) attorneys' fees awards in similar cases; and (4) the amount in controversy and the results obtained.   *See Koontz*, 2013 WL 1337260, at *13 (quoting *Wolfe*, 2010 WL 3809857, at *5).   Each of the four factors will be considered in turn.

### 1.  Customary Fees for Similar Work

This factor considers the customary fee "for similar work in the community."   *Johnson*, 488 F.2d at 718.   The fee movant bears the burden of "produc[ing] satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award."   *Westmoreland Coal Co.*, 602 F.3d at 289 (quoting *Plyler*, 902 F.2d at 277 (internal citations and quotation marks omitted)).

Moving counsel provided the Court with affidavits from peer attorneys Mark Goldner, David L. Grubb, and Benjamin L. Bailey, stating that the requested hourly rates reflect, and in some cases lag behind, the rates that these attorneys actually bill clients.   (*See* ECF No. 75-2 at ¶ 5; ECF No. 75-3 at ¶ 10; ECF No. 75-4 at ¶¶ 5, 8.)   These individuals, in addition to another peer attorney, Robert L. Coffield, further assert that the hourly rates for the attorneys involved are comparable to the prevailing market rates in the Charleston, West Virginia, area.   (*See* ECF No. 75-2 at ¶¶ 7–8; ECF No. 75-3 at ¶¶ 13–14, 20 (describing the requested hourly rates as "extremely reasonable and well within the range of prevailing market rates for similar legal services in West Virginia"); ECF No. 75-4 at ¶¶ 7, 9 (noting that the requested hourly rate for the partners involved "is well within the reasonable range of prevailing market rates in this area, if not actually a bit low"); ECF No. 75-5 at ¶¶ 7–8.)   These attorneys, who provide that they practice in the areas of federal civil litigation generally, § 1983 civil rights cases, and health care regulation, (ECF No. 75-2 at ¶ 1; ECF No. 75-3 at ¶ 3; ECF No. 75-4 at ¶ 1; ECF No. 75-5 at ¶ 1 (emphasizing Mr.

Coffield's experience "representing health care clients in health care regulatory, transactional and administrative litigation, including regularly appearing before and handling [CON] matters before the [HCA]")), are prominent Charleston attorneys with many years of experience,[3] and their affidavits support Marietta's proposed hourly rates as reasonable and in accordance with the prevailing market rate for this area.

Additionally, these individuals identify various state and federal cases in which the court awarded them attorneys' fees based on hourly rates ranging from $325 to $400.   (ECF No. 75-2 at ¶ 5; ECF No. 75-3 at ¶¶ 15–18; ECF No. 75-4 at ¶ 5.)   Mr. Bailey also provides a list of "several [state court] decisions involving other lawyers in West Virginia" where the attorneys were awarded fees from $375 to $450 in fee-shifting cases, none of which, however, appear to involve § 1983 or federal constitutional issues.   (ECF No. 75-3 at ¶ 19.)   The identified cases are not similar to the matter before this Court, and the only attorney who purports to have experience in health care regulation or the CON process does not provide any example of a court ordered fees award in these types of cases.   (*See generally* ECF No. 75-5.)   However, the Court notes that Defendant does not dispute the customary local fee or supporting evidence.

2.   Experience, Reputation, and Ability of the Attorneys

Mr. Arceneaux attests to the experience of Marietta's attorneys in his affidavit.   Mr. Arceneaux graduated from law school in 1980, clerked for a Justice of the Supreme Court of Appeals of West Virginia, served as General Counsel for a local district of the United Mine

---

[3] Mr. Goldner is an attorney with over twenty-two years of experience and is a named partner in his Charleston firm. (ECF No. 75-2 at ¶ 1.)   Mr. Grubb has been a member of the West Virginia Bar for almost forty years and is the founding partner of his law firm.   (ECF No. 75-3 at ¶¶ 1–3.)   Mr. Bailey, the managing partner of his firm, has practiced law in West Virginia for almost forty years.   (ECF No. 75-4 at ¶ 1.)   Finally, Mr. Coffield has more than twenty years of experience practicing law in this State and is a member of his law firm.   (ECF No. 75-5 at ¶ 1.)

Workers of America, worked as Deputy Attorney General for the State of West Virginia, and practiced privately in multiple capacities before achieving partner at Lewis Glasser, PLLC in 1993 where he currently works.   (ECF No. 77-1 at ¶¶ 1–4.)   Mr. Casto graduated from law school in 1982 before working as Assistant Prosecuting Attorney for Kanawha County, West Virginia, for eight years and then transitioning to Lewis Glasser, PLLC, where he became a partner in 1994. (*Id.* at ¶ 6.)   Mr. Casto specializes in health care matters, including those involving the CON process and HCA.   (*Id.*)   Ms. Raupp, a senior associate at Lewis Glasser, PLLC, graduated from law school in 2001, and has worked at the firm since 2007.   (*Id.* at ¶ 7.)   Prior to joining the law firm, Ms. Raupp spent fifteen years combined at the United States Department of Labor, Office of Administrative Law Judges, and various law firms in Mississippi, Virginia, and West Virginia. (*Id.* (noting that her experiences in private practice have revolved around "various administrative, civil and commercial litigation matters").)   Finally, Mr. Elliot, another senior associate at Lewis Glasser, PLLC, graduated from law school in 1999 with the distinction of being inducted into the Order of the Coif and has worked the over sixteen years since in the areas of bankruptcy, civil litigation, and commercial law.   (*Id.* at ¶ 8.)   While the attorneys have similar but distinguishable experience, these differences seem to be accounted for within their proposed hourly rates.   This reflects the *Johnson* Court's pronouncement that, typically, "fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation."   *See* 455 F.2d at 718–19.

As for the reputation and ability of the attorneys, the affidavits of peer attorneys attached to the motion speak toward these factors.   For example, Mr. Goldner stated in his affidavit that Mr. Arceneaux has served as a mediator in employment cases in which Mr. Goldner was counsel

and that he has appeared against Mr. Arceneaux and Ms. Raupp in Fair Labor Standards Act ("FLSA") cases.   (ECF No. 75-2 at ¶ 3.)   He describes the "skills and caliber of work of Mr. Arceneaux, Ms. Raupp, and their firm to be very high."   (*Id.*)   Similarly, Mr. Grubb appeared before Mr. Arceneaux when he served as mediator in several of Mr. Grubb's consumer and employment law cases, and Mr. Grubb describes Mr. Arceneaux's skills and the caliber of his work as "extremely high."   (ECF No. 75-3 at ¶¶ 7, 13 (noting that the proposed hourly rate for Mr. Arceneaux was reasonable given Mr. Grubb's knowledge of his "skill, ability, training, experience, and reputation").)   Mr. Bailey, who is also familiar with Mr. Arceneaux and the firm of Lewis Glasser, PLLC, writes that Mr. Arceneaux litigated cases with other attorneys in Mr. Bailey's firm and that Mr. Arceneaux was "a mediator in several consumer cases and that he has acted as a discovery commissioner in cases for [Mr. Bailey's] firm."   (ECF No. 75-4 at ¶ 3.)   Mr. Bailey also describes the caliber of Mr. Arceneaux's work as "very high."   (*Id.*)   Lastly, Mr. Coffield, whose affidavit is in support of Mr. Casto, states that "Mr. Casto is a skilled and experience[d] health care lawyer who is very knowledgeable in the areas of [CON] and other regulatory issues that come before the [HCA] and other state health care regulatory agencies." (ECF No. 75-5 at ¶ 3.)   No affiant speaks toward the reputation or ability of Mr. Elliot, the fourth attorney for whose work Marietta seeks fees.

   3.   Fees Awards in Similar Cases

Of the four *Johnson* factors considered in determining a reasonable hourly rate, Marietta's motion and supporting evidence is most deficient with respect to this factor.   While Marietta's counsel and the affiants tender evidence of fees and costs awards in other cases, the Court finds it a stretch to consider them "similar" to the above-styled action.   Marietta's counsel generally states

that he has "previously been awarded attorney's fees in a variety of cases before the West Virginia Supreme Court, the Circuit Courts of West Virginia, and the West Virginia Human Rights Commission" but fails to mention any specific cases.  (ECF No. 77-1 at ¶ 5.)   Counsel provides one case from the Northern District of West Virginia where he was awarded fees as a Rule 11 sanction, but that case was brought under the Fair Housing Amendments Act and the Americans with Disabilities Act and does not appear to have involved any federal constitutional issues.   (*Id.*) *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, No. 99-1424, 2000 WL 42250, at *1 (4th Cir. Jan. 20, 2000) (per curiam) (unpublished opinion), *aff'd*, 532 U.S. 598 (2001).

The cases referred to by the affiants involve fees awards in cases brought under the FLSA, state consumer protection laws, and various other statutory and common law claims.  (*See* ECF No. 75-2 at ¶ 5; ECF No. 75-3 at ¶¶ 15, 19; ECF No. 75-4 at ¶ 5.)   Mr. Grubb cites several state court cases but describes them only as fee-shifting cases without any reference to the issues involved.  (*See* ECF No. 75-3 at ¶¶ 16–18.)   One case referenced by Mr. Bailey was a civil rights case brought under § 1983 although it involved claims arising from alleged excessive force employed by various law enforcement officers.  (ECF No. 75-4 at ¶ 5 (citing *Wolfe*, 2010 WL 3809857, at *1).)   Despite its irrelevance to health care regulation and the dormant commerce clause, Mr. Bailey was awarded an hourly rate of $325 for that case in 2010.  (*Id.*)

4.   <u>Amount in Controversy and Results Obtained</u>

No monetary damages were sought by Marietta in the Complaint; only injunctive and declaratory relief were included as desired remedies beyond reasonable attorney's fees and costs. (*See* ECF No. 1 at 20–21.)   However, as the Court discussed in its memorandum opinion issuing

the injunction in this case, the economic consequences of the challenged statute for Marietta were substantial. (*See* ECF No. 39 at 19 ("This process severely restricts Marietta's right to fairly compete within the market of health care service providers. Thus, Marietta will inevitably and imminently suffer economic harm as a result of the statute at issue.").) While the monetary value of those consequences is not readily measurable, Marietta's success in this lawsuit undoubtedly prevented a large monetary loss for the plaintiff companies as well as numerous other similarly situated out-of-state health care systems. For this reason, the Court finds that the amount in controversy was significant despite the fact that no monetary damages were sought.

Further, Marietta's fight in challenging the now repealed CON exemption directly altered the legal landscape for hospitals seeking to alter their health services related to ambulatory care facilities. *Cf. Doe v. Kidd*, 656 F. App'x 643, 657–58 (4th Cir. 2016) (unpublished opinion), *cert. denied*, 137 S. Ct. 638 (2017). Without the filing of the above-styled action or a similar one, Marietta and others would have suffered in the short and long run. As stated above in the prevailing party analysis, the Court found that the statute at issue was likely unconstitutional under the dormant commerce clause as Marietta argued in its Complaint and subsequent motion for preliminary injunction. Due to the strong advocacy of Marietta's counsel, the results obtained, especially in light of the legislature's repeal of the challenged statute, were ideal for Marietta and many other entities not involved in this litigation. Therefore, this "most critical factor" weighs heavily in Marietta's favor. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

5. Reasonable Hourly Rate Findings

Based on the parties' evidence and briefing, the lack of opposition from Defendant, and the Court's familiarity with this litigation and the local legal market, the Court makes the following

findings:

The Court **FINDS** that the proposed hourly rates for the four attorneys—Mr. Arceneaux, Mr. Casto, Ms. Raupp, and Mr. Elliot—are reasonable.   This finding takes into consideration the following: similar fees charged by the peer attorney affiants; the four attorneys' education, experience, and reputation as supported by the peer attorneys' affidavits; rates awarded in the Southern District of West Virginia and state court cases to these and other attorneys for fee-shifting cases; what was at stake for Marietta and the expediency with which these attorneys secured their clients relief.   Therefore, Mr. Arceneaux and Mr. Casto, who the Court witnessed in hearings to be effective advocates for Marietta, will be awarded an hourly rate at the proposed $325 and $350 amounts, depending on the nature of the work.   Additionally, the Court determines that the proposed $275 hourly rate for Ms. Raupp, who also expended a significant number of hours on this case, is reasonable as is the $300 hourly rate proposed for Mr. Elliot.

While Lewis Glasser, PLLC seeks $150 per hour for work by three paralegals, the Court **FINDS** that a rate of $100 per hour is more consistent with the Charleston market.   In making this determination, the Court notes that none of the affiants provided information as to their belief about the market rate for paralegals or what their respective firms bill for paralegal work, (*see* ECF Nos. 75-2, 75-3, 75-4, 75-5), nor did the motion expand on why the proposed rate was reasonable. The Court notes that it, along with other district courts within the Fourth Circuit, has not awarded fees for paralegal work as high as that requested by Marietta here.   *See Constellium Rolled Prods. Ravenswood, LLC v. Rogers*, No. 2:15-cv-13438, at *2–3 (S.D. W. Va. Oct. 5, 2017) (awarding fees at an hourly rate of $100 for paralegals); *McGee v. Cole*, 115 F. Supp. 3d 765, 775 (S.D. W. Va. 2015) (same); *Koontz*, 2013 WL 1337260, at *22 (same); *Wolfe*, 2010 WL 3809857, at *8

(same); *see also Finney v. MIG Capital Management, Inc.*, No. 2:13–02778, 2014 WL 1276159, at *15 (S.D. W. Va. Mar. 27, 2014) (awarding $95 per hour for paralegal work).  *But see Cook v. Jones & Jordan Eng'g, Inc.*, No. 5:06-cv-00627, 2009 WL 3169152, at *5 n.8 (S.D. W. Va. Sept. 29, 2009) (awarding an hourly rate for a portion of a paralegal's work at $120).  Consequently, the Court concludes that $100 per hour for work by Mr. Evans, Ms. Radford, and Ms. Hager is reasonable given the prevailing market rate.

Lastly, the Court **FINDS** that a reasonable hourly rate for work by a legal clerk who was a law student at the time the work was completed is $75.  Lewis Glasser, PLLC requests an hourly rate for Ms. Casto of $125, but this seems excessive for non-attorney and non-paralegal work.  As the Western District of North Carolina noted last year in awarding an hourly rate of $75 for work performed by a "legal intern/law student," these individuals "neither have the full training of [a] law graduate nor the experience of a paralegal."  *See Triplett v. N.C. Dep't of Pub. Safety*, No. 5:15-CV-00075-RLV-DCK, 2017 WL 3840422, at *3 (W.D.N.C. Sept. 1, 2017).  As with the paralegal rate, neither the motion nor the supporting affidavits provide any support for the proposed rate.  Further, other districts within the Fourth Circuit similarly situated to the Southern District of West Virginia have awarded fees for law clerks at a comparable rate.  *See id.*; *Wolfe v. Va. Dep't of Transp.*, No. 2:13CV00038, 2015 WL 858875, at *3 (W.D. Va. Feb. 27, 2015) (awarding fees for three law students at $75 per hour).  Marietta has the burden of showing the reasonableness of the proposed hourly rate, *see McAfee v. Boczar*, 738 F.3d 81, 91 (4th Cir. 2013), and the Court finds that the burden has not been met here.  Nonetheless, the Court determines that $75 per hour for Ms. Casto's work is reasonable.

20

B.    *Reasonable Number of Hours Worked*

In *Koontz*, this Court noted the following standard in determining the reasonable number

of hours worked:

> Plaintiff bears the burden of proving that the number of hours her counsel worked
> is reasonable.   "When plaintiff prevails on only some of the claims made, the
> number of hours may be adjusted downward; but where full relief is obtained, the
> plaintiff's attorney should receive 'a fully compensatory fee,' and in cases of
> exceptional success, even an enhancement."   *Hensley v. Eckerhart*, 461 U.S. at
> 435.   "The number of hours must obviously be adjusted to delete duplicative or
> unrelated hours.   At bottom, the number of hours must be reasonable and must
> represent the product of 'billing judgment.'"   *Id.* at 437.

2013 WL 1337260, at *19.   As for the reasonableness of the number of hours, the Court reiterates

that an award should reflect only an amount that is reasonable in relation to the results obtained.

*See Hensley*, 461 U.S. at 434; *see also Robinson*, 560 F.3d at 244.

While a total of 564.40 hours initially seems a bit excessive for work on this case, the Court

recognizes that the constitutional issues involved were not unsophisticated.[4]   *Cf. Trimper v. City

of Norfolk*, 846 F. Supp. 1295, 1304 (E.D. Va. 1994) (involving "what the plaintiff's own counsel

---

[4] The Court also finds the seventh factor from *Johnson*, the time limitations imposed by the circumstances of this case, particularly relevant in determining whether Marietta's proposed number of hours is reasonable given the comparatively short life of this case.   The swift nature of this lawsuit imposed tight time limitations on all parties. The case arose from a potentially unlawful state statute passed by the West Virginia Legislature.   That statute provided that an in-state hospital could file a short exemption application with the HCA that would prevent it from having to complete the CON process and would prevent affected persons from challenging or requesting a hearing on the application.   While the HCA had the authority to approve or reject these exemption applications, the applications would be approved automatically by operation of law in forty-five days in the absence of HCA action.   After the law's implementation, an in-state hospital filed an exemption application.   Thus, Marietta initially had no longer than forty-five days from that application's filing to commence this action and acquire its desired relief.

Marietta promptly filed its Complaint in September 2016, asserting multiple theories for the state law's unconstitutionality, and shortly thereafter followed that filing with its motion for preliminary injunction.   (ECF Nos. 1, 8.)   A few weeks later, the Court heard arguments on the motion for preliminary injunction, and in due time issued the injunction that halted the effect of the challenged statute and enjoined HCA from acting on any current or future applications.   The West Virginia Legislature amended the statute at issue, which prompted Marietta to quickly prepare and file a second motion for preliminary injunction.   (ECF No. 55.)   The Court held a second hearing on this renewed motion and found that Marietta was entitled to an extension of the injunction despite the amendment because it did not substantially alter the discriminatory effect of the law.   This concluded the bulk of the case's substantive issues as the West Virginia Legislature repealed the statute during its June 2017 special session.   Consequently, Marietta achieved its desired result within approximately eight months after vigorous litigation.

21

deemed the most blatantly unconstitutional permit law he had ever seen," which the court noted "was so obvious that even the least skilled law student would have recognized the issue and solution"), *aff'd*, 58 F.3d 68 (4th Cir. 1995).   The Complaint's central theory for relief was based on the dormant commerce clause, which Marietta aptly describes as "often complex."   (ECF No. 76 at 14 (quoting *Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc.*, 381 F. Supp. 2d 499, 504 (E.D. Va. 2005)).)   This was the legal theory focused on by the Court when issuing the preliminary injunction in December 2016.   (*See* ECF No. 39 at 7–16.)   Nevertheless, Marietta employed additional theories in its Complaint and motion for preliminary injunction, arguing that the Fourteenth Amendment's due process and equal protection clauses similarly provided avenues for relief.   (*See* ECF No. 1 at 13–20; ECF No. 9 at 10.)   Despite the Court's decision to focus on the dormant commerce clause in its memorandum opinion—as it represented Marietta's strongest argument—the other legal theories were not frivolous and work dedicated to advancing them was not in vain.

Marietta has submitted detailed billing statements to the Court.   (ECF No. 77-1 at 7–40.) The Court finds the vast majority of hours billed to be reasonable.   The bulk are related directly to conducting legal research on the issues presented by this case; drafting and revising the Complaint and motion for preliminary injunction; preparing for and attending multiple status conferences and hearings held by the Court; engaging in discovery matters; tracking and discussing the status of legislation that altered the landscape of this litigation; and communicating with clients, opposing counsel, outside experts, and other attorneys.   These hours are reasonably expended and reflect the success that Marietta attained in this suit.  *See Hensley*, 461 U.S. at 437; *Martin*, 48 F.3d at 1359.   The Court also notes that Marietta "voluntarily reduced the time spent briefing the

Motion to Dismiss the Individual Defendants in this matter, the claim on which they were not successful."   (ECF No. 76 at 15.)

Nevertheless, the Court finds that a further reduction is necessary for the time spent briefing Defendant's Motion to Dismiss Verified Complaint as Moot.   The desired results of this case were achieved when the West Virginia Legislature repealed the challenged statute, and Defendant timely filed its motion to dismiss the case, recognizing that no live dispute remained before the Court.   While Marietta's response to the motion did not deny the case's mootness, it advocated for a permanent injunction or a continuation of the previously entered preliminary injunction despite the fact that the statute subject to the injunction had been repealed with no indication of potential revival.   (*See* ECF No. 72 at 3.)   The Court rejected Marietta's arguments and granted Defendant's motion in full as the controversy was clearly moot.   Therefore, Marietta was not successful on this motion, and it should not be awarded fees for its efforts to contest it.

The hours spent on Marietta's unsuccessful bid to dispute the motion to dismiss as moot are represented in Statements 13 and 14 of Marietta's provided billing statements.   (ECF No. 77-1 at 38–39.)   Ms. Raupp billed time related to this motion on October 10, 17, 18, and 19, 2017; Mr. Arceneaux billed for his work on Marietta's response to the motion on October 17, 18, and 19, 2017; and Mr. Evans, a paralegal, billed for work related to it on October 20, 2017.   (*See id.*)   As such, the Court **FINDS** that a reduction in the proposed number of hours billed by Mr. Arceneaux (2.25 hours),[5] Ms. Raupp (10.25 hours), and Mr. Evans (0.75 hours) will remedy the inclusion of hours spent unsuccessfully opposing Defendant's motion to dismiss this case as moot. Accordingly, the Court **FINDS** that a reasonable number of attorney hours for Mr. Arceneaux in

---

[5] These hours were billed at an hourly rate of $350.   (ECF No. 77-1 at 39–40.)

this case is 143.5 and for Ms. Raupp is 160.   The Court further **FINDS** that Marietta is not entitled to any fee for Mr. Evans, whose work was solely dedicated to the response to the motion to dismiss the case as moot.   The Court otherwise accepts Marietta's proposed number of hours.   (*See id.* at 6.)

In sum, the Court's lodestar **FINDINGS** are:

| | | |
|---|---|---|
| Attorney Webster J. Arceneaux, III | 13.25 hours/$325 per hour | $4,306.25 |
| | 130.25 hours/$350 per hour | $45,587.50 |
| | | $49,893.75 |
| Attorney Thomas G. Casto | 35.50 hours/$325 per hour | $11,537.50 |
| | 165.25 hours/$350 per hour | $57,837.50 |
| | | $69,375.00 |
| Attorney Valerie Harris Raupp | 160 hours/$275 per hour | $44,000.00 |
| Attorney Spencer Elliot | 6 hours/$300 per hour | $1,800.00 |
| Legal Clerk Anna Casto | 14 hours/$75 per hour | $1,050.00 |
| Paralegal Dora Radford | 26.5 hours/$100 per hour | $2,650.00 |
| Paralegal Beth Hager | 0.40 hours/$100 per hour | $40.00 |
| **Subtotal** | | $168,808.75 |
| **Voluntary Reduction** | | ($38,062.00) |
| **Total** | | $130,746.75 |

Additionally, Marietta claims $435.34 in costs.   Based on the exhibit attached to the motion, it appears that $385.84 of those costs came from photocopies, copies of documents, and postage in October and December of 2016.   (*See* ECF No. 77-1 at 18.)   However, the additional $49.50 is represented in the billing statements as "Service of Process Ayme Cochran, RMR, CRR," who is a court reporter for this Court, and the movant has struck through that item as a voluntary reduction.

(*See id.* at 20.)   That reduction was not accounted for in the total amount for proposed costs. Thus, the total amount of requested costs should be reduced accordingly.   Because the initially claimed amount of $385.84 in expenses is supported and justified and Defendant does not dispute the proposed amount, the Court **FINDS** that Marietta is entitled to an award of $385.84 for these expenses.

        C.    *Adjustment to the Lodestar Amount*

        While Defendant does not challenge the hourly rates proposed by Marietta, it argues that the Court should significantly reduce the requested amount for the following two reasons: (1) Marietta seeks fees for work not related to the preliminary injunction; and (2) Marietta's billing information is vague and "do[es] not comport with the specificity and billing increment requirements standard in the practice of law."   (*See* ECF No. 79 at 5–6.)   For these reasons, Defendant requests the Court to reduce the lodestar by a percentage "to reflect the limited nature of [Marietta's] success in the underlying suit."   (*See id.* at 6–7.)   The Court will not rehash its discussion of Marietta's status as the prevailing party in this case, and it does not find that a percentage reduction is necessary given the voluntary reductions by Marietta and the Court's decision to reject additional hours spent opposing Defendant's motion to dismiss the Complaint as moot.   This resolves Defendant's first justification for reducing the requested amount, and the Court further rejects Defendant's second basis as the billing statements appear adequate in terms of specificity of the descriptions contained therein.   *See Cline*, 972 F. Supp. at 374.   Defendant provides no authority supporting the proposition that the statements "do not comport with the specificity and billing increment requirements standard in the practice of law."   (*Id.* at 6.)   It has not met its burden to show that a reduction to the lodestar is proper here.   *See Blum*, 465 U.S. at

898.

The lodestar amount is presumptively sufficient, and the burden of proving that an enhancement is necessary falls on the fee applicant.  *Perdue*, 559 U.S. at 546.  The presumption exists because the lodestar "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Del. Valley*, 478 U.S. at 566.  Any enhancement to the lodestar "may not be awarded based on a factor that is subsumed in the lodestar calculation." *Perdue*, 559 U.S. at 546.  To ensure that a fees award "does not produce windfalls to attorneys," *Blum*, 465 U.S. at 897, the applicant must produce "specific evidence" that the lodestar fee necessitates an enhancement.  *Purdue*, 559 U.S. at 553.

Marietta argues in its motion that the Court should consider the following *Johnson* factors in considering whether to enhance the lodestar calculation: (1) time limitations imposed by the circumstances of the case; (2) the undesirability of the case within the legal community; and (3) the professional relationship between the client and firm.  (ECF No. 76 at 17 (relying on the seventh, tenth, and eleventh *Johnson* factors).)  The Court already considered above the time limitations imposed by the circumstances of the case when evaluating whether the number of hours proposed were reasonably expended.  *See supra* note 4.  Further, the Court does not find that the second or third grounds asserted by Marietta justify a lodestar enhancement.  Marietta has the burden of providing specific evidence that those factors necessitate an enhancement, and its general and speculative statements regarding the undesirability of being a local firm practicing health care law and challenging the HCA do not represent such specific evidence.  Accordingly, the Court does not find that an enhancement is proper as any enhancement would create a windfall to Marietta's counsel.  *See Blum*, 465 U.S. at 897.

26

*III.    CONCLUSION*

For the reasons provided above, the Court **GRANTS IN PART** and **DENIES IN PART** Marietta's Motion for Attorney's Fees.   (ECF No. 75.)   The Court **ORDERS** Defendant to pay Marietta **$130,746.75** in attorneys' fees and **$385.84** in costs for a total award of **$131,132.59**. The Court **DISMISSES** this case and **DIRECTS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        February 23, 2018

_____

THOMAS E. JOHNSTON, CHIEF JUDGE